UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KOH TSURUTA,<br><br>    Plaintiff,<br><br> vs.<br><br>AUGUSTANA UNIVERSITY,<br><br>    Defendant. | 4:15-CV-04150-KES<br><br><br>ORDER DENYING PRELIMINARY<br>INJUNCTION |

**BACKGROUND**

Defendant, Augustana University, is a private liberal arts college located in Sioux Falls, South Dakota. Plaintiff, Koh Tsuruta, was a student at Augustana University. During the summer of 2015, Tsuruta was accused of rape and sexual assault by another Augustana student. The incident allegedly occurred on July 3, 2015. On August 4, 2015, the student reported the incident to Minnehaha County law enforcement. Tsuruta was arrested and charged with several counts of sexual assault. His criminal proceedings are currently pending in state court.

On August 5, 2015, the student also reported the incident to Augustana and filed a complaint against Tsuruta pursuant to Augustana's Title IX Equal Opportunity (Civil Rights) Policies and Procedures handbook. Augustana suspended Tsuruta pending the outcome of its internal investigation and

complaint-adjudication procedures. Tsuruta requested Augustana to stay its internal proceeding pending the outcome of his state criminal matters. Augustana refused.

On September 22, 2015, Tsuruta filed a complaint with the Circuit Court in the Second Judicial Circuit of South Dakota. He sought declaratory and injunctive relief that would stay the Augustana proceeding. On September 28, 2015, the matter was removed to this court. Docket 1. Pending is Tsuruta's motion for a preliminary injunction that would stay the Augustana proceedings. A hearing on the matter was held before this court on October 6, 2015.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy." *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citation omitted). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper*, 60 F.3d 519, 520 (8th Cir. 1995). To determine whether the issuance of a preliminary injunction is appropriate, the court considers the following factors:

(1)     the threat of irreparable harm to the movant;

(2)     the state of balance between this harm and the injury that granting the injunction will inflict on other parties;

(3)     the probability that movant will succeed on the merits; and

(4)     the public interest.

2

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The *Dataphase* test for preliminary injunctive relief is flexible, and the court must ask "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113; *see also Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999).

## DISCUSSION

## I.   Likelihood of Success on the Merits

The Eighth Circuit has explained that "[t]he most important of the *Dataphase* factors is the . . . likelihood of success on the merits." *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). Generally, this factor requires the moving party to demonstrate that it has "a 'fair chance' of success on the merits[.]' " *Planned Parenthood Minn., N.D., S.D., v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). A "fair chance" of success does not mean a greater than fifty percent likelihood of prevailing on the merits of the claim. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003) (citing *Dataphase*, 640 F.2d at 113). Thus, "[a]t the early stage of a preliminary injunction motion, the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

### A.      § 1983 – Due Process

Section 1983 provides a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state"

3

causes the deprivation of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983. Tsuruta contends that Augustana's complaint-resolution procedures deny him due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. He must first demonstrate, however, that Augustana is a "state actor" and therefore amenable to his § 1983 claim. *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982); *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).

Augustana is a private university. Although it is not an entity of either the State or Federal government, it may be deemed a state actor if its allegedly unconstitutional conduct is said to be "fairly attributable" to the government. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). There are several different theories that the Supreme Court has endorsed to determine whether an entity's conduct is "fairly attributable" to the government. *See Blum*, 457 U.S. at 1005.

In *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Court was asked to determine whether a private school was nonetheless a state actor. Augustana acknowledges that it receives federal funding for its compliance with Title IX regulations. But in *Rendell-Baker*, the Court observed that the receipt of federal funding alone does not transform an otherwise private entity into an entity of the state. *Id.* at 840. This was so even when "virtually all of the school's income was derived from government funding[.]" *Id.*

Augustana likewise acknowledges that its receipt of certain federal funds is contingent upon its compliance with Title IX's regulations. *See* 20 U.S.C.

1681(a). Title IX's regulations require recipients of those funds to "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. 106.8(b); *see also 2011 Dear Colleague Letter*, http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last visited Oct. 2, 2015) (providing examples of features these procedures may share). In *Rendell-Baker*, the Court noted that "extensive regulation" that compels or coerces a private school to act in a given way could constitute state action. *Rendell-Baker*, 457 U.S. at 841 (ultimately finding the school was not so extensively regulated); *see also Blum*, 457 U.S. at 1009-1010 (finding no state action even when regulations impose penalties). Tsuruta has disclosed no cases where a court has found that a private school's compliance with Title IX's complaint-resolution regulations make that entity a state actor. The courts that have considered this issue appear to agree that private colleges are not state actors by virtue of their adoption of Title IX grievance procedures. See, e.g., *Xiaolu Peter Yu v. Vasser College*, 2015 WL 1499408 at * 11 (S.D.N.Y. Mar. 31, 2015); *Doe v. Columbia University*, 2015 WL 1840402 at *9 n.5 (S.D.N.Y. Apr. 21, 2015); *see also Curto v. Smith*, 248 F. Supp. 2d 132, 139 (N.D.N.Y. 2003) (noting "no direct oversight or involvement by state officials" in matters such as creating and enforcing disciplinary policies in a private institution weigh against state action determination).

Another means of showing state action is if the private entity performs a "public function." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352

(1974). While Augustana performs a public function in the literal sense as a university, the Court has made clear that the question is whether the function is one that has been "traditionally the exclusive prerogative of the State." *Id.* (citations omitted) (noting examples of this include holding elections and functioning as a town). The provision of schooling in and of itself is not such a function. *Rendell-Baker*, 457 U.S. 842.

Another means of demonstrating state action is when there is a "symbiotic relationship" or "joint participation" between the state and the private entity. *Blum*, 457 U.S. at 1011. The relationship must be extensive and intertwined enough that it could be said that the government is responsible for the private entity's conduct. *Cf. Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724 (1961) (finding a private restaurant located on public land that receives public support was a state actor). Tsuruta has brought forth no facts suggesting a level of entanglement between Augustana and the government that raises to the level of *Burton. See Rendell-Baker*, 457 U.S. at 842-43 (rejecting argument that a private school that receives federal funding, without more, was not analogous to *Burton*.).

The rejection of these theories leads to the conclusion that Augustana is not a state actor. Because Augustana is not a state actor, it is not amenable to Tsuruta's constitutional due process claim. Therefore, Tsuruta is not likely to succeed on the merits of his § 1983 claim.

**B.**      **Title IX Claim**

Title IX of the United States Education Amendments of 1972 provides in part that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Unlike Tsuruta's § 1983 claim, he may proceed against Augustana even though the entity is a private university. *See, e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 687 (1979) (allowing private cause of action by female student against two private medical schools that received federal funding). Tsuruta asserts that the procedures Augustana has enacted to adjudicate sexual assault complaints discriminate against him on the basis of his gender. More specifically, he argues those procedures create a disparate impact on male students accused of sexual misconduct at Augustana.

The Court in *Cannon* noted the similarity between Title IX and Title VI, and suggested Title VI also created a private right of action. *Id.* at 699. Then in *Alexander v. Sandoval*, 532 U.S. 275, 278 (2001), the Court was asked to determine whether a private right of action exists to enforce disparate impact regulations promulgated under Title VI. The Court again observed the similarity between Title IX and Title VI. *Id.* at 279-80. The Court concluded there was no private right of action to enforce the disparate impact regulations of Title VI. *Id.* at 293. This was so because "Title VI itself prohibits only intentional discrimination." *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 178

(2005). The Court has not, however, articulated whether an individual can nonetheless maintain a private right of action under Title IX using a disparate impact theory.

Prior to *Sandoval*, the Tenth Circuit held that a disparate impact claim under Title IX can be asserted. *See Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir. 1997). The court in *Roberts* analogized Title IX to Title VI. It concluded that because a Title VI plaintiff did not need to show discriminatory intent, then the Title IX plaintiff was likewise not required to show discriminatory intent. *Id.* That conclusion, however, would not apply after *Sandoval*. *See Jackson*, 544 U.S. at 178.

Post-*Sandoval*, there is some authority holding that a Title IX plaintiff cannot successfully assert a disparate impact theory. *See Manley v. Texas S. Univ.*, 2015 WL 2240882 at *10-11 (S.D. Tex. May 12, 2015); *Doe v. Columbia Univ.*, 2015 WL 1840402 at *8 (S.D.N.Y. Apr. 21, 2015); *Xiaolu Peter Yu v. Vassar Coll.*, 2015 WL 1499408 at *10 n.6 (S.D.N.Y. Mar. 31, 2015); *Weser v. Glen,* 190 F. Supp. 2d 384, 395 (E.D.N.Y. 2002). These cases recognize that because Title VI prohibits only intentional discrimination and because Title IX is patterned on Title VI, then a disparate impact cause of action under Title IX could not be successfully pursued. *See, e.g., Doe,* 2015 WL 1840402 at *8 (concluding that "courts have held that disparate-impact claims may not be brought under Titles VI and IX.") (citing cases). Tsuruta has not cited any cases that have held to the contrary. The court agrees with the reasoning of those

8

courts that have held that, post-*Sandoval*, a claimant cannot bring a disparate impact cause of action under Title IX.

Although courts have not recognized a viable disparate impact theory under Title IX, they have generally observed two other types of claims that can be asserted by a Title IX plaintiff challenging a school's disciplinary process: (1) claims of an erroneous outcome due to the school's flawed proceeding and (2) claims that the school selectively enforced its disciplinary proceeding. *See, e.g.*, *Yusuf v. Vassar Coll.*, 35 F.3d 709, 712 (2d Cir. 1994); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-39 (6th Cir. 2003) (unpublished). Under either theory, the plaintiff must demonstrate that gender bias was a "motivating factor" behind the school's conduct. *Yusuf*, 35 F.3d at 715.

Here, Tsuruta cannot succeed on an "erroneous outcome" cause of action because Augustana's disciplinary proceeding has not arrived at an outcome at all. Rather, the disciplinary proceeding is ongoing. Tsuruta likewise cannot succeed on a "selective enforcement" cause of action because Tsuruta has not alleged or shown that a female student in sufficiently similar circumstances to his own was treated more favorably by Augustana. *Id.*, *see also Mallory*, 76 Fed. App'x at 641 (citing *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003)). And under either theory, Tsuruta has not made any showing that his gender was a motivating factor behind the school's conduct. Rather, Tsuruta asserts that the procedures "in practice" apply only to males generally, and that males specifically are singled out in Augustana's sexual assault grievance proceedings. Tsutura's first assertion is merely a conclusion offered without

evidentiary support, while his second assertion ignores the reality that males are, whether at Augustana or any other location in the country, more likely to commit sexual assault than females. But this does not show that gender was a motivating factor behind the school's conduct. Instead, the handbook is written in gender neutral language and applies to every student, not just male students. The fact that males are more often the subject of disciplinary (or criminal) proceedings stemming from allegations of sexual assault does not suggest that those proceedings are tainted by an improper motive. Consequently, the court concludes that Tsuruta is unlikely to succeed on the merits of his Title IX claim.

### C. Breach of Contract Claim

Tsuruta asserts that Augustana's policies and procedures handbook creates a contractual relationship between himself and Augustana. He further asserts that Augustana is in breach of that contract for several reasons. In order to succeed on a breach of contract claim under South Dakota law, Tsuruta must show: (1) an enforceable promise; (2) a breach of that promise; and (3) resulting damages. *Bowes Const., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010). Moreover, every contract imposes a duty on the parties to perform in good faith and with fair dealing. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990). For the purpose of this motion only, the court will assume the handbook creates an enforceable promise between Augustana and its students.

10

### 1. The handbook

In order to determine if Augustana breached its contract, the court will set out the relevant provisions of it. Augustana's Equal Opportunity (Civil Rights) Policies and Procedures handbook provides the framework within which Augustana conducts its internal complaint-resolution procedures for those complaints that are based on discrimination, harassment, or retaliation. These policies and procedures apply to "members or non-members of the campus community, students, student organizations, faculty, administrators and/or staff." Docket 1-1 at 25. Allegations of non-consensual sexual intercourse involving Augustana students fall within their ambit. *Id.* at 31.

The Assistant Dean of Students serves as Augustana's Title IX Coordinator and is charged with overseeing implementation of Augustana's policy on equal opportunity, harassment, and nondiscrimination. The University President and the Title IX Coordinator appoint members of the Equity Grievance Panel (EGP). *Id.* at 36. The EGP consists primarily of Augustana faculty and personnel. Members of the EGP serve in various capacities within the complaint-resolution process. They are required to receive annual training related to Augustana's policies and procedures and the complaint-resolution process itself.

When a complaint is filed, a member of the EGP is assigned to work with the complaining party. The appointed EGP member and the Title IX Coordinator are charged with making an initial determination of whether an equal opportunity, harassment, or nondiscrimination policy has been violated.

11

*Id.* at 38. Augustana aims to complete each investigation within 60 business days, although that period of time can be extended as necessary "for appropriate cause." *Id.*

The handbook explains that Augustana "may undertake a short delay (several days to several weeks)" with its investigation "when criminal charges on the basis of the same behaviors that invoke this process are being investigated." *Id.* Nonetheless, "[c]ollege action will not be altered or precluded on the grounds that civil or criminal charges involving the same incident have been filed[.]" *Id.* The investigative process itself must be "thorough, reliable and impartial." *Id.* Augustana may also implement interim remedies when deemed appropriate, such as suspending the student accused of violating school policy.

If the Title IX Coordinator believes that there is a preponderance of the evidence showing that a violation has occurred, a resolution proceeding may be initiated. The handbook defines its preponderance of the evidence standard as "whether it is more likely than not" that the accused individual committed the policy violation. *Id.* at 39. For serious violations such as the one Tsuruta is accused of, the Title IX Coordinator may recommend a formal hearing to take place.

When a formal hearing is initiated, the Title IX Coordinator will appoint to the hearing panel a non-voting panel Chair and three members of the EGP. None of the panel members may be practicing attorneys, and none of the panel members can have prior experience with the grievance at issue. *Id.* at 40. The accused individual will receive notification of the charges against him or her as

well as the location of their hearing. The parties are allowed to have an advisor present, who may also be an attorney and may consult with the party at the hearing, but the advisor cannot speak for the individual. *Id.* at 40-41. At the hearing, the parties are allowed to call witnesses and to question them, although "formal cross-examination is not used between the parties." *Id.* at 41. The handbook explains that the formal rules of evidence do not apply, that there will be no observers during the hearing, that the proceedings are private, and that the proceedings are recorded in the event of an appeal. *Id.* at 42.

At the close of the hearing, the EGP panel will deliberate in a closed session. The panel's decision is reached by majority vote, and they must base their decision using the preponderance of the evidence standard. *Id.* Thus, if the panel believes it is more likely than not that the accused individual committed the violation, then the panel will recommend appropriate sanctions to the Title IX Coordinator. Those sanctions range from formal warnings to student suspensions or expulsions and the withholding or revocation of a diploma. *Id.* at 43-44. The handbook also identifies the procedures applicable in the event of an appeal. *Id.* at 45.

Finally, the handbook sets forth a number of rights applicable to the accused party. These rights are: (1) to be treated with respect by Augustana officials; (2) to take advantage of campus support groups; (3) to have an advocate during the proceedings; (4) to refuse to have an incident resolved through Augustana's conflict resolution process; (5) to have the grievances resolved through substantial compliance with Augustana's procedure

handbook; and (6) to be informed of the outcome of the proceeding in writing. *Id.* at 46-47.

### 2. Claims of breach

First, Tsuruta claims Augustana breached the terms of the handbook requiring it to perform a thorough and impartial investigation. Tsuruta introduced a copy of Augustana's investigation summary into evidence at the preliminary injunction hearing. He argues that the investigation should have been more thorough and that it was not completed impartially. The court disagrees. The summary contains, among other things, names of the parties, potential witnesses, the allegations against Tsuruta, the standard of proof by which the allegations would be evaluated, summaries of interviews with the complaining party and other possible witnesses, a note that Tsuruta did not want to provide a statement, an analysis section, and a conclusion that there was sufficient evidence for the grievance proceedings to continue. Although Tsuruta may wish that Augustana's investigations are more thorough than they are, the court cannot agree that the investigation was completed in a less-thorough or less-impartial manner than is required by the handbook. Thus, the likelihood that Tsuruta would succeed on this claim is low.

Second, Tsuruta claims that Augustana breached the provision of the handbook setting out a 60-day window within which to complete its investigations. He argues that there is nothing that requires Augustana to complete an investigation within that time and that Augustana should have agreed to delay his grievance proceeding until after the completion of his

14

criminal trial. The handbook, however, expressly states that Augustana's proceedings will not be delayed due to parallel civil or criminal proceedings. And while the Title IX Coordinator can delay the proceedings for "appropriate cause," there is nothing that requires Augustana to do so whenever a student requests such a delay. Moreover, none of the enumerated rights provided by the handbook give students the right to delay their grievance proceeding. Rather, Augustana is given the discretion to delay the proceedings if needed. Here, however, Augustana does not believe such a delay is necessary. Although Tsuruta disagrees, that does not mean Augustana is in breach of its handbook. Consequently, the court concludes Tsuruta's likelihood of succeeding on this claim is low.

Third, for the first time during the preliminary injunction hearing, Tsuruta asserted that Augustana was in breach for suspending him. The handbook, however, explicitly states that a student may be suspended as an interim remedy during the investigation. Thus, the court concludes Tsuruta's likelihood to succeed on this claim is low.

Finally, Tsuruta contends that Augustana is in breach of a non-existent portion of the handbook. Namely, he contends that the handbook does not explicitly recognize or respect his Fifth Amendment right against self-incrimination. He argues that because each contract imposes a duty of good faith and fair dealing, Augustana is ostensibly acting in bad faith or at least performing unfairly to him. He notes that the EGP may use his silence against

15

him at the hearing by virtue of an adverse inference.[1] Thus, according to Tsuruta, he is given a Hobson's choice of fully defending himself in the civil proceeding only to risk having his words be used against him in his state criminal proceeding, or invoking his right to remain silent at the civil proceeding and foregoing a full defense.

Although not a contract claim, a very similar concern was addressed by the First Circuit Court of Appeals in *Gabrilowitz v. Newman,* 582 F.2d 100 (1978). There, a student at the University of Rhode Island was charged by law enforcement with assault with the intent to commit rape on another student. *Id.* at 101. Shortly thereafter, the University suspended the student from school for the same incident and instigated its student disciplinary procedure. *Id.* Many of the procedures adopted by the University of Rhode Island were similar to those employed by Augustana: students could request an advisor be present at the hearing; the technical rules of evidence did not apply; the parties had some ability to question and cross-examine witnesses; the burden of proof was on the party bringing the allegation; decisions of the disciplinary panel would be made by majority vote; and there were limited avenues for appeal. *Id.* at 102.

The student raised the same dilemma Tsuruta now raises:

---

[1] While the adverse inference would be improper in a criminal case, the same is not true in civil cases. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]"). Augustana's complaint-adjudication proceeding is a civil proceeding.

16

> [I]f he mounts a full defense at the disciplinary hearing without the
> assistance of counsel and testifies on his own behalf, he might
> jeopardize his defense in the criminal case; if he fails to fully
> defend himself or chooses not to testify at all, he risks loss of the
> college degree he is within weeks of receiving and his reputation
> will be seriously blemished.

*Id.* at 103. The court concluded that "[a]lthough the choice facing him is difficult, that does not make it unconstitutional." *Id.* at 104 (citing *McGautha v. California*, 402 U.S. 183, 213 (1971)). The court reached that conclusion after determining that the student's statements at the disciplinary proceeding may, in fact, be used against him at the parallel criminal proceeding.

The choice facing Tsuruta is no doubt a difficult one. But in the absence of any promise on behalf of Augustana or rule of law forbidding it, it does not follow that Augustana has acted in bad faith because Tsuruta will have to make such a choice. Rather,

> [h]e can, if he wishes, stay out of the stream and watch the
> proceedings from dry land. But, if he does so, he forfeits any
> opportunity to control the direction of the current. Appellee must
> decide whether or not to testify at the hearing with the knowledge
> that, if he does, his statements may be used against him in the
> criminal case.

*Id.* Therefore, the court concludes that the likelihood Tsuruta would succeed on this claim is low.

### D.    **Declaratory Judgment and Estoppel Claims**

Tsuruta also seeks a declaratory judgment that Augustana's disciplinary proceedings violate his due process rights and that Augustana is liable on a theory of promissory estoppel. A declaratory judgment is itself a remedy, not a cause of action. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007);

*Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014). And Tsuruta cannot assert a promissory estoppel theory when the handbook itself would serve as the parties' contract and therefore be the measure of their rights and obligations. *Hofer v. Liberty Nat. Bank*, 2012 WL 5945169 at *6-7 (D.S.D. Nov. 28, 2012). Therefore, the court concludes Tsuruta is not likely to succeed on the merits of these claims, either.

In summary, the court finds that Tsuruta is unlikely to succeed on the merits of any of his claims. Consequently, the first *Dataphase* factor strongly weighs against granting the preliminary injunction.

## II.      Threat of Irreparable Harm

The second major *Dataphase* factor is that the movant must always show that he is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Eighth Circuit has further explained that the "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Dataphase*, 640 F.2d at 114 n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."). An irreparable harm is one which arises "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010). To demonstrate irreparable harm, Tsuruta must show that the harm is "certain, great and of such imminence that there is a clear and

18

present need for equitable relief." *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986). Notably, "plaintiff must make a showing of actual, substantial harm resulting from the alleged infringement." *Travelers Express Co. v. Transaction Tracking Tech., Inc.*, 305 F. Supp. 2d 1090, 1095 (D. Minn. 2003) (citation omitted).

Tsuruta's claim of irreparable harm is based largely on his § 1983 due process argument. He argues that the disciplinary proceeding "directly interferes with the mission of the criminal jury" and with his privilege against self-incrimination. Docket 1-1 at 15. The threatened deprivation of a constitutional right can serve as the basis for irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The court has already concluded Augustana is not a state actor and that Tsuruta cannot maintain his § 1983 due process claim against it. Nonetheless, Tsuruta overstates the import of the school disciplinary proceeding.

First, a finding in the disciplinary proceeding that Tsuruta violated the school's policy against sexual assault is not tantamount to a criminal conviction. The school's preponderance of the evidence standard is far lower than the reasonable doubt standard of determining guilt in a criminal case, and the school has no power to criminally sanction him. Second, if the hearing panel intends to draw an adverse inference based on Tsuruta's decision not to provide his side of the story at the hearing, that is not a constitutional deprivation. And as explained above, while Tsuruta's decision to testify or not

at the school disciplinary proceeding may be a difficult one, it does not create a constitutional quandary.

Tsuruta also asserts that he faces potential damage to his reputation and professional future if the disciplinary proceeding is not enjoined. Harm to one's reputation may constitute an irreparable injury. *See Roudachevski*, 648 F.3d at 706-07. But the harm Tsuruta complains of would be the natural consequence of the disciplinary proceeding should he be found in violation the school's policy. Whatever the outcome of the procedure, Tsuruta has not shown that the procedures Augustana has chosen to implement in its complaint-resolution process would cause it to arrive at its conclusion in an impermissible way. This factor weighs against granting the preliminary injunction.

## III.   Balance of Harms

This factor requires the court to evaluate the severity of the impact on the defendant should the injunction be granted and the hardship to the plaintiff should the injunction be denied. *PCTV Gold, Inc. v. SpeedNet, LLC.*, 508 F.3d 1137, 1145 (8th Cir. 2007). Tsuruta notes that he has already been suspended from school while his disciplinary proceeding is pending and that a no-contact bond has been imposed against him stemming from his criminal case. He also explains that he is no longer living in South Dakota. Tsuruta argues that whatever interest Augustana has in pursuing its disciplinary proceeding are largely satisfied. Augustana replies that it may be subject to liability if it fails to act in accordance with its Title IX obligations. *See McGrath v. Dominican Coll. of Blauvelt, N.Y.*, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009). If

its student handbook is indeed a contract, then it also gives the complaining party a right to expect Augustana will adhere to its complaint-adjudication proceedings. And Augustana does not want to set a precedent of ignoring the very procedures it has implemented because of a parallel state criminal proceeding.

As described with the irreparable harm factor, the harms alleged by Tsuruta are overstated. The University's disciplinary proceeding is not a criminal tribunal. Tsuruta naturally fears an unfavorable result from those proceedings, but he has not shown them to be defective. By comparison, Augustana's allegations of harm are somewhat speculative. Moreover, if the court were to enjoin Augustana from proceeding here, Augustana would not be setting a precedent for halting its proceedings on its own volition in the future. This favor weighs slightly in favor of Tsuruta.

## IV. Public Interest

The final *Dataphase* factor that this court must consider is the public's interest in the litigation. [T]he determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits . . . because it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012). The court has already determined Tsuruta's likelihood of success on all of his claims is low. There is some public interest, however, in universities like Augustana adhering to the policies and procedures that they are required

by law to adopt in order to adjudicate complaints of sexual assault among students. The weight of this factor does not support Tsuruta.

## CONCLUSION

The balance of the *Dataphase* factors weigh against Tsuruta. He has not met his burden of demonstrating that a preliminary injunction should be issued against Augustana. Accordingly, it is

ORDERED that the motion for a preliminary injunction (Docket 5) is denied.

Dated October 7, 2015.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

22